United States District Court
Southern District of Texas
**ENTERED**
August 28, 2023
Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| KATHERINE FARNER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00369 |
| | § | |
| CHCA BAYSHORE, L.P., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### OPINION AND ORDER

There are several motions pending before me: (1) Defendants' Opposed Motion to Enforce Settlement Agreement and Stay Discovery ("Motion to Enforce Settlement Agreement") (Dkt. 25); (2) Plaintiff's Response to Enforce Settlement and Cross-Motion for Settlement Approval ("Cross-Motion for Settlement Approval") (Dkt. 32); and (3) Defendants' Motion to Seal (Dkt. 30). Having reviewed the briefing and the applicable law, I **GRANT** Defendants' Motion to Enforce Settlement Agreement (Dkt. 25), **DENY** Plaintiff's Cross-Motion for Settlement Approval (Dkt. 32), and **GRANT** Defendants' Motion to Seal (Dkt. 30).

### BACKGROUND

Plaintiff Katherine Farner ("Farner") filed this lawsuit against CHCA Bayshore, L.P. and Healthtrust Workforce Solutions, LLC (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Starting in June 2021, Defendants employed Farner as a registered nurse at Bayshore Medical Center. During her time at Bayshore Medical Center, Farner alleges that Defendants withheld "payment for all hours worked, including overtime," denied her bona fide meal periods, and improperly deducted wages from her paycheck. Dkt. 23 at 1.

In February 2023, the parties began talking about the possibility of resolving this matter. Defendants' counsel, Sarah Morton ("Morton"), and Farner's counsel,

William Hogg ("Hogg"), engaged in a robust dialogue by email, exchanging various proposals and counter-proposals. On March 2, 2023, Morton sent Hogg an email with a detailed settlement proposal. The proposal had two main components. First, Morton proposed a monetary payment. Second, Morton listed six non-monetary terms (including confidentiality) that Defendants required be part of any settlement. *See* Dkt. 25-5 at 5–6.

Hogg did not immediately respond. Morton followed up with Hogg on March 8 and March 10. On March 10, Hogg agreed to a two-week discovery stay/extension and promised to "circle back next week about the offer." *Id.* at 4. On March 14, Hogg emailed Morton with a counter-proposal. He demanded a certain sum of money (an amount exceeding the amount Morton offered in the March 2 proposal) "for a release based on the terms discussed below." *Id.* at 3. Later that same day, Morton responded to Hogg's email with a question: "Will, to clarify, when you say 'on the terms discussed below,' do you mean the terms listed in my March 2 email?" *Id.* at 2. Hogg responded with a single word: "Correct." *Id.* The next day, Morton replied: "Will, we have a deal. I will send you a draft agreement next week when I'm back in town." *Id.*

On April 13, Morton sent a draft settlement agreement for Hogg to review. After reading the draft settlement agreement, Hogg informed Morton that same day that he wanted to discuss revisiting one of the non-monetary terms set forth in Morton's March 2 email. On April 14, Morton told Hogg by email: "No, that is not what we agreed on. We agreed to the terms in my March 2 email, which includes [the term that Hogg wanted to revisit]." Dkt. 25-8 at 6. Less than 45 minutes after receiving Morton's email, Hogg shot back an email "recant[ing] and rescind[ing]" his acceptance of any settlement proposal made by Morton. *Id.* at 5. Hogg claimed that he had misread Morton's March 14 email and that he did not fully appreciate the non-monetary settlement terms. Hogg further threatened to move forward with the litigation.

Defendants now seek to enforce what they believe is a binding and enforceable settlement agreement reached by the parties. In response to Defendants' Motion to Enforce Settlement Agreement, Farner concedes that the parties reached a settlement. Farner also acknowledges that the settlement "was the product of arm's length negotiations by experienced counsel." Dkt. 32 at 2. Farner goes so far as to ask me to approve the settlement—with one caveat. Claiming that I must review this FLSA settlement agreement for fairness, Farner requests that I find one of the non-monetary provisions of the settlement unfair and strike that term from the settlement.

## DISCUSSION

### A. THE PARTIES ENTERED INTO AN ENFORCEABLE SETTLEMENT AGREEMENT

"A district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (cleaned up). This case is before me on federal-question jurisdiction grounds. A federal court exercising federal-question jurisdiction looks to federal common law to determine whether a settlement agreement is valid and enforceable. *See Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Under federal common law, "[a] settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). Thus, "a binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-cv-1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (cleaned up). "Federal law does not require a written, signed agreement. If the parties' communications indicate that an agreement has been reached and there are no material terms outstanding to negotiate, the court can enforce a settlement agreement made orally or by email." *Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 WL 4700896, at *5 (S.D. Tex. Aug. 13, 2020) (citation omitted).

This is not a close call. All of the material terms of the settlement are clearly set forth in the email exchange between Plaintiff's and Defendants' counsel. As I noted above, the settlement has two components: monetary and non-monetary terms. With respect to the monetary component, Hogg requested on behalf of his client a certain sum of money. Morton clearly accepted that amount by email. Turning to the non-monetary aspect of the settlement, Morton identified six non-monetary conditions in her March 2 email. Hogg also accepted those non-monetary terms by email. There is no wiggle room here. Before responding to Hogg's cash demand "for a release based on the terms discussed below," Dkt. 25-6 at 4, Morton followed up to ensure there was a meeting of the minds. She specifically asked if Hogg's reference to "on the terms discussed below" meant the non-monetary terms identified in Morton's March 2 email. Hogg's one-word response—"Correct"—is unambiguous.[1] *Id.* at 2. Once Hogg confirmed his understanding that the terms in Morton's March 2 email were part of the settlement, Morton told Hogg that a deal had been reached. At that time, all of the material terms had been agreed to by the parties. The settlement was complete.

It makes no difference that Hogg tried to rescind his acceptance of the settlement once he reviewed the draft settlement agreement that Morton sent. A party who "changes his mind when presented with the settlement documents . . . remains bound by the terms of the agreement" if the parties agreed to all material terms. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. Dec. 1981). Hogg's claim that he misread the non-monetary settlement terms in Morton's March 14 email fares no better. As the Fifth Circuit has explained, "[o]ne who attacks a settlement must bear the burden of showing that

---

[1] The entirety of Morton's March 14 email was this question: "Will, to clarify, when you say 'on the terms discussed below,' ***do you mean the terms listed in my March 2 email***?" Dkt. 25-6 at 4 (emphasis added). Thus, Hogg could not have been responding "Correct" to any other question. The parties have not provided any other email from Morton to Hogg on March 14, 2023, so there is also no question as to the terms to which Morton was referring.

the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Mid-S. Towing Co.*, 733 F.2d at 392 (quotation omitted). There is no mutual mistake here, as only one party (Farner) alleges that she—or more precisely, her counsel—did not understand or appreciate the terms of the settlement. *See S.E.C. v. Huffman*, No. 94-10597, 1995 WL 295849, at *1 n.2 (5th Cir. 1995) ("By definition, however, *mutual* mistake of law requires that both contracting parties be mistaken.").

Although Farner acknowledges that the parties reached a settlement, she seems to suggest that one of the non-monetary terms might be unenforceable due to a lack of consideration. This argument fails. The email thread between counsel clearly shows that the parties agree to a cash payment in return for the six non-monetary terms contained in Morton's March 2 email.

For these reasons, the application of federal law clearly establishes that there is an enforceable settlement agreement between Farner and Defendants.

**B.    JUDICIAL APPROVAL OF THE PARTIES' FLSA SETTLEMENT AGREEMENT IS UNNECESSARY BECAUSE THERE IS A BONA FIDE DISPUTE**

Farner primarily argues in the Cross-Motion for Settlement Approval that I should reject one of the non-monetary terms in the settlement agreement because it is unduly harsh, oppressive, and punitive. Along those lines, Farner claims that I am required to review the FLSA settlement at issue for fairness and reasonableness before the settlement terms can be enforced. I disagree.

The FLSA prohibits the "waiver of basic minimum and overtime wages." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the [FLSA]."). Accordingly, many courts across the country have held that parties cannot settle FLSA claims unless the negotiations were supervised by the Department of Labor or the agreement was judicially approved. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). The Fifth Circuit, however, does not require a district court to approve each and every FLSA

settlement. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012). In *Martin*, the Fifth Circuit held that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." *Id.* The Fifth Circuit "reasoned that such an exception would not undermine the purpose of the FLSA because the plaintiffs did not waive their claims through some sort of bargain but instead received compensation for the disputed hours." *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015) (citing *Martin*, 688 F.3d at 257).

Here, Farner admits that "[t]here is no doubt the Parties had bona fide disputes over factual and legal issues." Dkt. 32 at 12. Defendants fully agree with that assessment. Indeed, the parties agree that the FLSA applies to Farner as a non-exempt employee; that she is entitled to overtime compensation for any hours she worked over 40 hours in a workweek; and that she is entitled to be paid if unable to receive a bona fide meal period. What is at dispute in this case is

> *whether and to what extent* [Farner] actually performed any work off-the-clock or whether she experienced interruptions during her lunch period to the degree she was unable to receive a bona fide meal period and if so, how often that occurred. These questions do not affect [Farner's] substantive rights under the FLSA, but instead affect liability, hours worked, and compensation owed—the exact issues in dispute in [*Martin*].

Dkt. 38 at 5. Because (1) parties may privately settle a bona fide dispute over hours worked or wages owed; and (2) this case presents such a bona fide dispute, I hold that court approval of the parties' settlement agreement is unnecessary. *See, e g.*, *Verm v. D&G Directional Drilling, Inc.*, No. 6:20-cv-00249, 2021 WL 3516261, at *1 (E.D. Tex. May 17, 2021) ("[T]he *Martin* exception is applicable to the parties' settlement agreement, and the court's approval is unnecessary."); *Garcia v. 8th Ave. Wings, LP*, No 4:18-cv-464, 2018 WL 6591822, at *1 (N.D. Tex. Dec. 14, 2018) ("[T]he settlement agreement resolves a bona fide dispute as to whether the FLSA entitles Garcia to overtime payments. The agreement occurred within the context of a lawsuit, and both parties were represented by counsel when they signed it. As

a result, the agreement is enforceable without the court's approval."). In this case, the parties entered into a settlement agreement freely and voluntarily.

Although it is commonplace in this circuit for the parties to jointly submit their FLSA settlement agreement to the Court for review and approval—even when there exists a bona fide dispute over hours worked or wages owed—such an approach is neither necessary nor required under controlling Fifth Circuit precedent. As Defendants note: "the parties are at liberty to privately settle the claims between them on the terms of their choosing, without the need for judicial review and approval of such terms." Dkt. 38 at 5.

One final point. I note that this litigation does not involve the concerns that necessitate judicial review of the fairness of an FLSA settlement. Namely, the parties are represented by competent counsel, and Farner is aware of her substantive rights under the FLSA. *See Martin*, 688 F.3d at 257 ("i.e., little danger of [Farner] being disadvantaged by unequal bargaining power").

## C.   DEFENDANTS' REQUEST FOR FEES AND COSTS

Defendants request an award of the fees and costs associated with the preparation of the Motion to Enforce Settlement Agreement. A district court "may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–56 (1991) (quotation omitted). A party's refusal to abide by a settlement agreement without justification amounts to a bad-faith action that can support the award of attorneys' fees by a federal court. *See Procaccino v. Jeansonne*, No. 17-cv-4748, 2017 WL 6733722, at *4 (E.D. La. Dec. 29, 2017).

The circumstances here do not justify an award of attorneys' fees. Although I do not find Farner's arguments against enforcing the settlement agreement persuasive, I do not believe her arguments were made in bad faith. Accordingly, Defendants' request for fees and costs for preparation of the Motion to Enforce Settlement Agreement is denied.

**D.      DEFENDANTS' MOTION TO SEAL**

Last but not least, I will address Defendants' Motion to Seal. By way of background, Defendants initially filed the Motion to Enforce Settlement Agreement under seal without seeking leave to do so. I ordered Defendants to review the Fifth Circuit's decision in *Bihn Hoa Le v. Exeter Finance Corp.*, which held that "[t]he public's right of access to judicial proceedings is fundamental." 990 F.3d 410, 418 (5th Cir. 2021). I also ordered that Defendants file a motion to seal if they still thought that the Motion to Enforce Settlement Agreement and attached exhibits documenting the settlement negotiations should remain sealed. Defendants did so. *See* Dkt. 30. As part of their Motion to Seal, Defendants have submitted a redacted version of the Motion to Enforce Settlement Agreement for public viewing. Defendants also request that the exhibits to the Motion to Enforce Settlement Agreement (Dkts. 25-1 to 25-8), which reflect the parties' settlement negotiations, remain sealed in their entirety. For the reasons identified below, I **GRANT** Defendants' Motion to Seal.

Defendants' position is simple and straightforward: the parties reached a private settlement of this matter. One of the material terms of that settlement is that the terms must remain confidential. "Without sealing the terms of the parties' settlement," Defendants assert, they "would be left without a means to enforce their agreement while also preserving the confidentiality for which the parties have bargained." Dkt. 30 at 2. I concur.

When parties to an FLSA settlement submit a settlement agreement for the Court's approval, "there is a strong presumption in favor of keeping the settlement agreement[] . . . unsealed and available for public review." *Parrish v. Def. Sec. Co.*, No. 3:10-CV-2604, 2013 WL 372940, at *1 (N.D. Tex. Jan. 31, 2013) (quotation omitted). This is because a "court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate." *Prater v. Com. Equities Mgmt. Co.*, No. CIV.A. H-07-2349, 2008 WL 5140045, at *9 (S.D. Tex. Dec. 8, 2008). "The public's interest in accessing the settlement agreement,

including the settlement amount, often outweighs any interest in confidentiality." *Id.*

These same concerns are not present here. As already explained, the parties are *not* required to obtain a judicial stamp of approval on the instant settlement agreement. As a result, the parties are free to resolve their differences outside of the prying eyes of the public. There is simply no public interest in the disclosure of a private settlement agreement reached exclusively between Farner and Defendants, especially when the parties emphatically agree that confidentiality is a core condition of the deal. The only means by which Defendants have to pursue enforcement of the settlement agreement and maintain the bargained-for condition of confidentiality is by ensuring that the amount and the terms of the settlement are filed under seal. This limited sealing satisfies the Fifth Circuit's requirement that "the extent of sealing [be] congruent to the need." *Le*, 990 F.3d at 420. A blanket rule requiring that a settlement agreement the parties intended to remain confidential become part of the public domain any time a motion to enforce is filed would strip the contracting parties of the benefit of their bargain. That is not, and should not, be the law.

Although I fully agree that the amount and the terms of the settlement must remain under seal, a blanket sealing of all exhibits filed in this matter is, per se, improper. *See id*. at 418 ("[C]ourts should be ungenerous with their discretion to seal judicial records."*)*. Following the Fifth Circuit's directive that "judges, not litigants must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure," *id*. at 419, I have carefully reviewed the documents submitted under seal in this case. To protect public access to judicial proceedings and records, I will have the Court Clerk docket for public view redacted versions of the following: (1) Motion to Enforce Settlement Agreement (Dkt. 25) and the attached

exhibits; (2) Cross-Motion for Settlement Approval (Dkts. 32 and 33)[2] and Exhibit 2; and (3) Defendants' Reply Brief in Support of Defendants' Opposed Motion to Enforce, Opposed Motion to Seal, and Response to Plaintiff's Motion to Enforce (Dkt. 38). Docket entries 25, 32, 33, and 38 (as well as all of the exhibits attached to those pleadings) shall remain under seal.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Enforce (Dkt. 25) is **GRANTED**, Plaintiff's Cross-Motion for Settlement Approval is **DENIED** (Dkt. 32), and Defendants' Motion to Seal (Dkt. 30) is **GRANTED**.

To be clear, the terms of the parties' settlement agreement are as follows: (1) Defendants will make a monetary payment to Farner in the amount reflected at Dkt. 25-5 at 3; and (2) the non-monetary terms set forth in Morton's March 2 email. *See id.* at 6.

Because this case has been resolved, the case should be dismissed. I will issue a separate final judgment.

SIGNED this 28th day of August 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] The only difference between Dkts. 32 and 33 is that Dkt. 32 contains some redacted portions, while Dkt. 33 contains no redactions. Both filings disclose substantive terms of the settlement agreement reached by the parties.